One of our attorneys is having to participate by Zoom. I'm going to make sure we can get that up. Hill v. Commissioner. Ms. Rubin? Yes. Can you hear us? I can, thank you. Great. Hold on and we're going to hear from Ms. Moore. Hope you're feeling okay, Ms. Rubin. Been better, but thank you for asking. Ms. Brynn? Good morning, Ms. Moore. Good morning. Good morning. Thank you, Your Honor. May it please the court, one of your more on behalf of Appellant Petitioner Albert Hill, III. Today, the taxpayer is appealing the tax court's final order dismissing for lack of jurisdiction the taxpayer's motion to redetermine interest on an overpayment of his gift tax liability. This court's review of the tax court's exercise of jurisdiction is de novo. You would agree, right, that an overpayment is distinct from a deposit? Certainly, Your Honor. Yes. You described, your client described the remittance as a deposit in your initial motion to redetermine interest. Isn't that right? That's correct, Your Honor. And if that was the right characterization, then there was no jurisdiction here, right? That's correct. The remittance was a deposit when made and then the parties agreed that the overpayment was a deposit when made and then the parties agreed that the remittance was a deposit when made and then the parties agreed that the tax court would have jurisdiction over the overpayment. See, part of the problem, speaking for myself, that you have, and Judge Pryor touched on it, and you can help me with this, is that on multiple occasions, your client, through representation, characterized what he was doing as making a deposit. A letter accompanying the money paid to the RF said, quote, he intended for the deposit, for the deposit to satisfy the requirements of 6603. There were four subsequent letters where he sought the return of his deposit under 6603. One letter said the $10 million was a deposit, not a payment, and sort of at every step along the way, he characterized this as a deposit, not an overpayment, and for folks familiar with tax work, they know the meaning of a deposit as opposed to an overpayment. So what is there in the order entered by Judge Christofson that suggested this was an overpayment, not a deposit? Thank you for that question, Your Honor. The taxpayer referred to the remittance as a deposit many times, and in fact, it was a deposit when made, and the character of the primary purpose of a deposit is that a deposit is returnable upon demand, and although the taxpayer made several attempts to have the deposit returned, it never was returned, and to answer your question directly, in the court's order, both in the stipulation of settled issues that the parties signed, as well as in the court's order, the remittance, $10,263,750, is expressly referred to as a payment. So the stipulation is at docket number 35, and in the court's order, excuse me, the stipulation is docket 30, and the court's order is docket 35. It is expressly referred to as a payment. And may I ask you at the outset, is there anything in the decision itself, the first page entered by the court, that made any reference to an overpayment? On the first page, Your Honor, no. That's what the judge signed. That's correct. However, Your Honor, I would like to address the implied question in there, which is, in general, in tax court decisions, a deficiency, a reference to a deficiency, is always going to be above the line, an above the line reference that the judge signs. And any reference to a taxpayer's remittance, be it a deposit or a payment, is always going to be below the line. And under the view that Judge Lager took, and that the commissioner is taking, there would never be any jurisdiction or express finding of an overpayment in a situation where a deposit converted to a payment. Let's even assume, for the sake of the argument, that the stipulation is part of the judgment, and that the district court's judgment rested upon that. I don't think that's right. But it's a question, whether it's a deposit or an overpayment, is a question of law. And the parties can't stipulate to the law. Whether it's a deposit or a payment certainly would be a legal question. However, it's not. The facts underlying that are facts that the parties can agree to. And what happened here is the taxpayer asked for the deposit back. He didn't get it back. And if you look at the revenue 51843, it specifically provides that when a taxpayer has a deposit that exceeds the tax liability ultimately determined to be due, and that is applied against another assessed or unassessed liability, then that can convert to a payment. And if you look at principal life footnote 26, the court held that when you have a situation like this, where the taxpayer makes a deposit for year A, there's an exam. And this is what happened here. The notice of deficiency proposed several different years in the alternative. The taxpayer later elected to have that deposit applied as a payment to 2012. And because of that, the parties stipulated in the stipulation as well as in the stipulated decision that it was a payment. So it was the facts underlying the change of the way it was applied that makes the parties stipulation binding. Moving on. There is also no requirement for the tax court's finding of an overpayment. I'm sorry. For the overpayment to be expressed. In Eaton versus Dorchester development, which is 692 F2D 727, this court held that consideration of implicit factual findings were necessary to determine whether the district court's dismissal for lack of subject matter jurisdiction was appropriate. Can I go back and ask you a question about this order entered by the tax court by Judge on July of 2019. You cited the second page of that where there was reference to a prepayment credit in the amount of 10 million and change. There's a last sentence in that paragraph that I just wanted to ask you about. It says, it is further stipulated that the deficiency for the What do you suppose the parties had in mind and how are we supposed to read that? Doesn't that suggest that there was no agreement to consider this as a payment, an overpayment or anything like that? Because the computation was made without considering that at all? Yeah. Well, that's a good question. I would say my reading of that is that as someone who all the time, often when there's a deposit or a prepayment, the taxpayer wants this decision document to include down to the penny exactly what the interest is. And for many reasons, IRS counsel doesn't want to do that. And the tax court doesn't want to do that. And so what happens is decisions get entered under what's called rule 55. And under those computations, the court says, here's what's going to happen. And then the parties go back and they figure out to the penny what it's going to be, and that gets entered. And then the IRS makes their entries on the IRS side. And so when I read this sentence, it makes me think this was the party's understanding. We are not saying to the penny, the amount that is due. But you appreciate why I raised the question? Because it sure looks like nobody considered this deposit or payment of 10 million bucks is being offered to bear upon the deficiency. But let me ask you a different question. You raise a second argument. As I read it for the first time in this court, that is to say that the chief judge of the tax court erred in transferring the case to a different judge. And I'm curious, when I looked at that, it didn't look to me like that issue was even raised in the tax court. Am I right about that? Your Honor, that's correct. We did not raise that argument in the tax court because there was no opportunity to address that issue in the tax court. Was there no opportunity? The reason I raise it is Hill's motion was reassigned from Gustav Sinthe-Laguerre on July 14th, 21. And Judge Laguerre didn't dismiss the case for lack of jurisdiction until October of 21. So there were three months in which to raise the issue in the tax court. And what struck me is that's the place to go. You're asking us to tell the tax court what its rules mean. It's certainly not clear from the statute that the chief judge couldn't assign it to another judge. But didn't you have the opportunity to raise this in tax court between the time the reassignment was made and the time the judgment was entered by the new judge? There is no mechanism for objecting to a specific judicial assignment within the tax court. I do understand your point. But within the tax court rules, there is no express provision for an... I heard your argument to be a little bit different. I thought your argument was, yeah, it may be that we abandoned this issue. We forfeited the issue. But really, we didn't because we didn't have time. As opposed to time or no time, there was no vehicle, no procedural method for doing it. That's a little bit different from saying we didn't have the opportunity because we didn't have time. Your Honor, what we certainly intend is that there was no express procedural mechanism for doing so. Okay. It's time for Ms. Rubin. Ms. Moore, you've saved some time for rebuttal. Good morning. I'd like to start by looking at document 35. And as was pointed out, there's nothing in the judge's order that states that there was, in fact, an overpayment. And contrary to my opposing counsel's point, yes, the tax court has the ability to determine an overpayment above the line. I point you to 6512B1, which grants the court jurisdiction to find an overpayment to determine the exact amount. And once the decision becomes final, the commissioner is supposed to refund that amount. And then 6512B2 states that if there is no refund of the amount found as an overpayment in the final decision, then you can come back to court and challenge that value to refund. So, of course, the tax court could find an overpayment above the line. That would be true with stipulations below the line or not. Secondly, the fact that this was termed prepayment credit in the stipulations, on its face, would seem to be inconsistent with saying that it is a payment. It is consistent with being a deposit. The fact that it was stated in those stipulations that that prepayment credit would not be considered in calculating the deficiency is inconsistent with it being a 2005-18 section 4.01. So, the order on its face does not find an overpayment, and that is absolutely necessary for jurisdiction. Secondly, I'd like to turn to principal life insurance, which my opponent points, cites for the concept that a deposit can be converted to a payment. Principal life insurance does not apply. It deals with the older definitions of deposits. It does not, in fact, address 6603. It does not address the revenue procedure. But in all events, what is clear is that if there's an assessed payment, if there's an assessed liability, and a deposit is applied to it, it becomes a payment. Before that, it is a deposit. That is how 6603 works, as the statute indicates, as the legislative history indicates, and as the revenue procedure indicates. Finally, the last point that I would like to make, unless there's further questions on the deposit point, is this court is correct to say that throughout this entire proceeding, up until the reply on the motion to return it, parties routinely referred to this remittance as a deposit. The IRS never refused to return it. They said, yes, we understand this is a deposit. We need to return it. But we're concerned. Are we supposed to return it to you or the district court? I particularly point the court to a December 2016 letter that was sent by the revenue agent handling the examination. This is document 46, exhibit D. It says, I looked at the litigation file for that district court action that's important to your argument here. And it seems to me that the parties agreed that any refund of tax payments would go to the district court. So do I need to get an authorization or request from the IRS? And that goes to the heart of what's going on here. The IRS said, we'll return it. It's a deposit. We just need to know what's in it. And we're concerned that perhaps it should go to the district court. Are there any questions regarding the deposit point? No. Thank you. On the reassignment to Judge Laubert, the first point is, sure, there's a recommendation for objecting. You can always make a motion in the tax court. To be sure, there's no provision saying, hey, there's a motion for objecting to the assignment. But there certainly is nothing in the tax court rules that precludes somebody from moving and saying, I object to the assignment of this case to a particular judge. Moreover, as Judge Marcus alluded to, there's nothing in the statutes governing the tax court that bars reassignment of tax court cases from one judge to another. Section 7444C and 746A grant the chief judge tremendous power in structuring how the tax court is run and how cases are assigned. And even in the reply brief, Mr. Hill acknowledges that, in fact, if there's an inability of the judge to handle a particular case, it can be reassigned. As such, there simply is no basis for finding any sort of abuse of discretion here by the chief judge to reassign a case to Judge Laubert. And again, as pointed out in our brief, this argument is waived at all events. Are there any further questions on the reassignment point? I don't hear any, Ms. Rubin. Well, thank you very much and thank you for allowing me to participate remotely. Thank you for being willing to be flexible, given the health issue, and we appreciate your argument this morning. Ms. Moore, you've got five minutes. Thank you. First, I'd like to address the 6212B point that Council made. 6212B-2 expressly provides that the tax court has jurisdiction to determine the amount of the overpayment, and such payment shall, when the decision of the tax court becomes final, be credited or refunded to the taxpayer. But that jurisdiction also is tied to 7481C-2B, which provides that when the taxpayer files a timely motion to redetermine interest, the tax court may reopen a case to determine whether the taxpayer has made an overpayment of interest. There is no requirement that the tax court make an express finding of an amount of an overpayment. Secondly, I'd like to point out that the main feature of deposits is that they are returnable on demand. I acknowledge that Mr. Hill's prior representatives sent several letters requesting the deposit be, referring to the remittance as a deposit, and requested that it be returned. There is no information in the record as to whether there was any oral communication back regarding where the remittance should be returned. Didn't this money come from the district court settlement of the trust or the estate? Am I wrong about that, that the money came into the tax court directly from the district court? That's correct, Judge. Okay, so the check that was written to make the deposit came from the district court clerk's office as a check in settlement of this other litigation. That is correct. But why was it unreasonable for the IRS to inquire? We don't know. Should we give this to your taxpayer or we give it to the district court? I don't understand that argument, why it was not reasonable for the IRS to inquire about that. I don't contend that it was unreasonable to inquire, certainly not, but what we contend is that the very nature of a deposit is that it's returnable upon demand, and Mr. Hill's representatives made several requests for that deposit to be returned. To return to where? The district court? I thought they wanted it to Mr. Hill. I believe that they did, and I agree with you, Your Honor, that they wanted it to go to Mr. Hill. Yes, but counsel for the government, and Your Honor is correct, that there is nothing saying that Mr. Hill's representatives said where they wanted it sent. However, because following Revenue Proclamation 2005-18, the original deposit was made for one tax year and then ultimately applied to another, the Revenue Proclamation provides that in that situation, the deposit can be converted to a payment, and that is what happened here, and that is what the party stipulated to. We are here now, today is 11 years to the day from the date that the initial deposit was made, and in all of that time, yes, there was a lot of... You don't get interest on the deposit. The question is whether he's going to get it at the federal funds rate or at the rate for overpayments. That's really the issue here. That's correct, Your Honor. And I understand there's a million dollars difference, and it matters, but that's really what we're talking about here. Yes, that's correct. It's about the rate, and briefly in my time, I'd like to touch on the judicial assignment. The tax court is not an Article III court. It is an Article I court, and there are very specific rules that govern how the tax court is organized, and in particular, just like U.S. soldiers can be referred to as troops, both collectively and individually, U.S. tax court judges are divisions, both individually and collectively. A division can have more than one judge. Certainly, Your Honor. Absolutely, it can. However, if a division has more than one judge, the statute requires the chief judge to designate a chief of that division, and there is no tax court division that has a chief judge designated. I don't know how you can raise this for the first time in an appellate court where you don't even give the tax court the opportunity. You can come in and file a garden variety motion. People do it all the time to recuse a judge, to reassign a case. You don't need a specific procedure to do that. Why is that not right? That's what Ms. Rubin says. You could have just filed a garden variety motion. Perhaps we could, but as I said before. And you didn't, so I don't know how us, as the Court of Appeals, get into assignment in the tax court. It just seems like it's a wave tear is the problem for your client. Okay, Ms. Moore, I think we understand your case, and we're going to move on to the next one. Thank you. Thank you.